IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 22-cv-02947-KAS

A.L.[1]

    Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION

    Defendant.
_____

**ORDER**
_____
**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on the **Social Security Administrative Record** [#6], filed January 10, 2023, in support of Plaintiff's Complaint [#1] seeking review of the decision of the Social Security Administration's Commissioner ("Defendant" or "Commissioner"), denying Plaintiff's claim for disability insurance benefits pursuant to Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 et seq. Plaintiff filed an Opening Brief [#8] (the "Brief"), Defendant filed a Response [#12] in opposition, and Plaintiff filed a Reply [#13]. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court has reviewed the entire

---

[1] Pursuant to D.C.COLO.LAPR 5.2(b), "[a]n order resolving a social security appeal on the merits shall identify the plaintiff by initials only."

case file and the applicable law. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.[2]

## I. Background

On November 21, 2019, Plaintiff filed an application for disability insurance benefits under Title II, alleging disability beginning November 15, 2017. Tr. 23.[3] Her claim was initially denied on August 13, 2020, and again upon reconsideration on December 11, 2020. Tr. 120, 147. On August 9, 2021, an administrative law judge (the "ALJ") held a telephonic hearing due to the COVID-19 pandemic. Tr. 23, 42-68. On April 25, 2022, the ALJ reached an unfavorable decision. Tr. 21. The Appeals Council denied review. Tr. 1, 7.

Notably, Plaintiff's identity was stolen and a third-party was fraudulently using her health insurance, resulting in numerous records which did not actually belong to Plaintiff. *See, e.g.*, Tr. 23; *Brief* [#8] at 2. At the outset, the ALJ found Plaintiff's documentation and testimony on this point persuasive, and, accordingly, did not consider the records Plaintiff identified as not belonging to her. Tr. 23.

The ALJ first determined that Plaintiff met the insured status requirements of the Act through June 30, 2022, and that she had not engaged in substantial gainful activity ("SGA") since November 15, 2017, the alleged onset date. Tr. 25. The ALJ then found that Plaintiff suffers from seven severe impairments: (1) degenerative disc disease of the

---

[2] The parties consented to proceed before the undersigned for all proceedings pursuant to 28 U.S.C. § 636(c) and D.C.COLO.LCivR 72.2. *See Consent* [#7]; *Reassignments* [#14, 15]; *Order of Reference* [#16].

[3] The Court refers to the Transcript of the Administrative Proceedings, located at Docket Nos. 6 through 6-12, by the sequential transcript numbers instead of the separate docket numbers.

thoracic and lumbar spine, including spondylolisthesis and facet arthropathies; (2) possible history of a coccyx fracture; (3) mild thoracolumbar scoliosis; (4) osteoarthritis of the left knee; (5) traumatic arthritis of the right ankle; (6) obesity; and (7) osteoporosis following gastric bypass surgery. *Id*. However, the ALJ also found that Plaintiff's impairments, either separately or in combination, did not meet or medically equal "the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)." Tr. 27.

The ALJ next concluded that Plaintiff had the residual functional capacity ("RFC") to perform "sedentary work"[4] with the following limitations:

> [W]ould need brief position changes at the workstation every 30 minutes. She can frequently push and pull with the lower extremities. She can occasionally climb stoop [sic], kneel, crouch, and crawl. She can frequently balance. She can have only occasional exposure to hazards. She can occasionally reach overhead, push, and pull bilaterally. She can frequently reach, handle, finger, and feel bilaterally.

Tr. 28. Based on the RFC and the testimony of an impartial vocational expert ("VE"), the ALJ found that Plaintiff is capable of performing her past relevant work as a customer services supervisor and a public relations representative. Tr. 33. The ALJ proceeded to make "alternative findings for step five of the sequential evaluation process," i.e., that there are other jobs existing in the national economy that she is also able to perform. *Id*.

Finally, the ALJ noted that Plaintiff was a "younger individual age 18-44" on the alleged disability onset date and noted that, if she had the residual functional capacity to perform the full range of sedentary work, a finding of "not disabled" would be directed by

---

[4] "Sedentary work" is defined as follows: "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

Medical-Vocational Rule 201.28. Tr. 33-34. The ALJ noted that Plaintiff's "additional limitations have little or no effect on the occupational base of unskilled sedentary work" because Plaintiff's RFC represented "only a slight erosion of the full range of sedentary work." Tr. 34 (citing Social Security Ruling 83-10, 1983-1991 Soc. Sec. Rep. Serv. 24, 1983 WL 31251 (Jan. 1, 1983)). The ALJ therefore found that Plaintiff was not disabled at step four but made "alternative findings for step five of the sequential evaluation process." Tr. 33-34.

The ALJ's decision is the Commissioner's final decision for purposes of judicial review. 20 C.F.R. § 404.981. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. Standard of Review and Applicable Law

Pursuant to the Act:

> [T]he Social Security Administration (SSA) is authorized to pay disability insurance benefits and Supplemental Security Income to persons who have a "disability." A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."

*Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (quoting 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B)). Under the applicable legal standard, a claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). The existence of a qualifying disabling impairment must be demonstrated by "medically

4

acceptable clinical and laboratory diagnostic" findings. 42 U.S.C. §§ 423(d)(3), 423(d)(5)(A).

"When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effect of the impairments in making a disability determination." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Act; rather, to be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See, e.g.*, *Kelley v. Chater,* 62 F.3d 335, 338 (10th Cir. 1995) (citing 42 U.S.C. § 423(d)(1)(A)).

The Court reviews the Commissioner's final decision by examining the administrative record and determining "whether the [ALJ's] factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). However, the Court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Casias v. Sec. of Health & Hum. Servs.*, 933 F.2d 799, 800 (10th Cir. 1991). In other words, the Court does not reexamine the issues de novo. *Sisco v. U.S. Dep't of Health & Hum. Servs.*, 10 F.3d 739, 741 (10th Cir. 1993). Thus, even when some evidence could support contrary findings, the Court "may not displace the agency's choice between two fairly conflicting views," even if the Court may have "made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal citation, quotation marks, and modification omitted).

A.      **The Five-Step Framework**

The Social Security Administration uses a five-step framework to determine whether a claimant meets the necessary conditions to receive Social Security benefits. *See* 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four, and if the claimant fails at any of these steps, consideration of any subsequent step or steps is unnecessary. *Williams v. Bowen*, 844 F.2d 748, 750, 751 (10th Cir. 1988) ("If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."). The Commissioner bears the burden of proof at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

Step one requires the ALJ to determine whether the claimant is "presently engaged in substantial gainful activity." *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004). If not, the ALJ considers at step two whether the claimant has "a medically severe impairment or impairments." *Id.* "An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citing 20 C.F.R. § 404.1521). Next, at step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation," *i.e.*, the "Listings." *Allen*, 357 F.3d at 1142. At step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). RFC is defined as "the most [the claimant] can still do despite [their] limitations" and it considers the claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(1), (a)(4). In making an RFC

determination, the ALJ must consider all the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 404.1545(a)(2). Also, "the ALJ must consider, at step four, whether a claimant's impairments prevent [him or her] from performing [his or her] past relevant work." *Wall*, 561 F.3d at 1052. "Even if a claimant is so impaired, the agency considers, at step five, whether [he or she] possesses the sufficient [RFC] to perform other work in the national economy." *Id.*

**B.     Substantial Evidence**

An ALJ must consider all evidence and explain why he or she finds a claimant not disabled. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). However, the ALJ need not specifically "reference everything in the administrative record." *Wilson*, 602 F.3d at 1148. Rather, "we review the Secretary's decision only to determine whether her factual findings are supported by substantial evidence and whether she applied the correct legal standards." *Clifton*, 79 F.3d at 1009 (citing 42 U.S.C. § 405(g) and *Byron v. Heckler*, 742 F.2d 1232, 1234-35 (10th Cir. 1984)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Wilson*, 602 F.3d at 1140 (internal quotation marks and citation omitted). "It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. A decision by the ALJ is not based on substantial evidence "if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). In other words, the Court's determination of whether the ALJ has supported his or her ruling with substantial evidence "must be based upon the record taken as a whole." *Broadbent v. Harris*, 698 F.2d 407, 412, 414 (10th Cir. 1983). However, the "'failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate

7

legal principles have been followed is grounds for reversal" separate from a lack of substantial evidence." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal citation omitted); *accord Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III. Analysis

Plaintiff argues that, despite the ALJ's statement that she did not consider any records identified as fraudulent, the medical providers must have considered those fraudulent records and, therefore, the ALJ's decision relied, directly or indirectly, on fraudulent records. *Brief* [#8] at 8. She admits that the ALJ arranged another physical consultative examination with Dr. Sever, but "[i]t is unknown is [sic] whether Dr. Sever reviewed any of the [fraudulent] records." *Id.* at 11. Defendant responds that the ALJ was aware of the fraudulent records and took steps to ensure that her findings were not based on those fraudulent records—including rejecting prior administrative medical findings and a prior consultative examination because they may have relied on the fraudulent records. *Response* [#12] at 8-9.

At the outset, the Court notes that the fraudulent records mostly involved efforts by a third party (who Plaintiff suspects is her sister-in-law) to obtain prescription drugs. *Brief* [#8] at 6-7. Plaintiff was apparently able to identify the fraudulent records and provide the ALJ with a table separating real and fraudulent records. *Id.* at 7. In light of the third party's drug-seeking behavior (and Plaintiff's lack of such behavior), it appears that Plaintiff (and the ALJ) should have been able to identify which medical opinions were tainted by reference to the fraudulent records with relative ease. Indeed, in multiple instances, both Plaintiff and the ALJ did so. *Id.* at 9 (Plaintiff identifying instances where Dr. Ellen Ryan and Dr. Andrea Szporn's records clearly mentioned drug-seeking behavior associated

8

with the fraudulent records); Tr. 26 (ALJ citing Dr. Ryan and Dr. Szporn records "apparently related to the fraudulent presentations for treatment seeking opioids by a third party"), 31 (finding Dr. Colleen Victory's opinion evidence unpersuasive because "Dr. Victory may have been provided records for someone other than [Plaintiff] who was fraudulently using [her] personal information").

Given the ease with which both Plaintiff and the ALJ were able to identify and discount these tainted records, the Court has no reason to doubt the ALJ's statement that she "has not considered those records identified by [Plaintiff] as not belonging to her." Tr. 23. On the other hand, the Court does not credit Plaintiff's vague assertions that other opinions (such as Dr. Kimberlee Terry's, Dr. John Kwock's, and Dr. Joseph Sever's) may have been tainted simply by their possible association with or review of fraudulent records. *Brief* [#8] at 11. For Plaintiff to show reversible error, she must specifically identify the problematic records which the ALJ considered.

**A.     Dr. Sever's Opinion**

The parties do not dispute that in September 2021, the ALJ learned that there were fraudulent records in Plaintiff's file and ordered a new consultative examination with Joseph Sever, M.D. *Brief* [#8] at 11; *Response* [#12] at 12. Plaintiff argues that Dr. Sever's opinion may have been tainted by the fraudulent records as well: "[i]t is unknown is [sic] whether Dr. Sever reviewed any of the [fraudulent] records." *Brief* [#8] at 11. She also argues that "the ALJ specifically cited no other evidence that supported Dr. Sever's favored physical evaluation." *Reply* [#13] at 2.

First, as discussed above, Plaintiff's concerns about Dr. Sever's opinions are speculative on their face—she does not know if Dr. Sever reviewed any of the fraudulent

9

records and does not point to any specific opinion that was plainly tainted by those records. *Brief* [#8] at 11.

Moreover, the ALJ explained why she found Dr. Sever's opinion persuasive. Tr. 30-32. She noted that Dr. Sever had reviewed records and noted Plaintiff's complaints before conducting a physical examination in which Plaintiff demonstrated discomfort sitting. Tr. 30 (citing Tr. 2586-88). The ALJ described Dr. Sever's examination findings in significant detail, including a description of his recommended limitations: she was limited to lifting 10 pounds occasionally and less than 10 pounds frequently; she should avoid lifting anything above shoulder height; she could only occasionally push/pull and reach overhead; she was limited to frequent reaching in other directions, handling, fingering, and feeling; and she should avoid more than occasional use of foot controls as well as unprotected heights, moving mechanical parts, operation of a motor vehicle, and more than occasional exposure to extreme temperatures and vibrations. Tr. 30-31 (citing Tr. 2588-96). Dr. Sever also limited Plaintiff to only frequent exposure to humidity and wetness and to dust, odors, fumes, and pulmonary irritants. Tr. 2596. The ALJ explicitly incorporated several of Dr. Sever's limitations into her sedentary work RFC, including his limitations on exposure to hazards; overhead reaching, pushing and pulling bilaterally; and reaching, handling, fingering, and feeling bilaterally. *Compare* Tr. 31 (recommendations), *with* Tr. 28 (RFC determination).

The Court takes Plaintiff at her word that "[t]he [p]arties agree that the ALJ based [sic] primary weight on Dr. Sever's consultative exam to develop the statement of [RFC]." *Reply* [#13] at 7. However, Plaintiff goes on to argue that "Dr. Sever's opinion is found persuasive because it is consistent with other (again, unidentified) medical evidence" and

10

it is therefore reasonable to assume "that she found [Dr.] Sever's opinion persuasive because it dovetailed roughly with the contaminated opinions." *Id.*

However, the ALJ specifically explained why she credited Dr. Sever's opinions over those of Dr. Terry, Dr. Madden, and Dr. Kwock (who had put Plaintiff on light work rather than sedentary work): because Dr. Sever "performed a thorough in-person physical exam and provided a detailed assessment of the claimant's functioning." Tr. 31-32. His findings of limitation were "supported by his own exam findings showing some gait abnormalities and some pains with range of motion testing of the lumbar spine and hips but also showing normal strength findings, negative straight leg tests, and otherwise normal range of motion findings." Tr. 32. The ALJ also found that his assessment was generally consistent with other evidence of record as a whole,[5] but this does not appear to be the primary reason for crediting Dr. Sever's opinions. There is also no indication that the ALJ credited Dr. Sever's opinion because it dovetailed with plainly contaminated opinions. *Reply* [#13] at 7.

The Court finds that Dr. Sever's "thorough in-person physical exam" and "detailed assessment of the claimant's functioning" constituted substantial evidence on which the ALJ could permissibly base her RFC determination. Tr. 31-32. Accordingly, the Court finds no error in the ALJ's consideration of Dr. Sever's opinions.

---

[5] Plaintiff objects to the ALJ's consistency analysis because, she argues, it suggests the ALJ credited the tainted opinions of Dr. Ryan, Dr. Szporn, Dr. Madden, and Dr. Terry—but again, the Court does not credit Plaintiff's vague assertions that Dr. Sever's opinions are tainted when Plaintiff was able to specifically identify problematic notes or opinions in other records but none in Dr. Sever's. *Brief* [#8] at 12; *cf. id.* at 9.

**B.     Limiting Principles**

Plaintiff argues that, even though the ALJ explicitly stated she was not relying on the records Plaintiff identified as fraudulent, she implicitly relied on those records nonetheless. Tr. 23; *Reply* [#13] at 1. However, the ALJ not only stated that she was disregarding the records identified as fraudulent by Plaintiff, she rejected the prior consultative examination and ordered a new one because Dr. Victory may have relied, in part, on these fraudulent records. Tr. 23, 31. Plaintiff goes on to assert that Dr. Sever's opinions may have been contaminated even though she "cannot prove he had the contaminated records." *Reply* [#13] at 8. The Court has already explained why Plaintiff's vague assertions of contamination are not credible.

Even assuming, *arguendo*, that Plaintiff's vague assertions of "indirect" contamination are accurate, Plaintiff offers no solution. The ALJ took Plaintiff at her word as to which records were fraudulent and disregarded them and, in an abundance of caution, expressly ordered a new consultative exam because the previous one *may have been* contaminated by those records. Tr. 23, 31 ("Dr. Victory *may have been* provided records for someone other than [Plaintiff] who was fraudulently using [her] personal information") (emphasis added). What more could the ALJ have done to insulate her decision from contamination by the fraudulent records? If remanded, what can the next ALJ do to address these concerns? Plaintiff does not say.

If the Court were to reverse and remand based on vague, indirect contamination of the ALJ's decision, as Plaintiff urges, the next ALJ would be in the exact same position as this one. It will still be true that "none of the SSA reviewing doctors" who originally considered Plaintiff's claim "could possibly have known (at the time of their written

12

reviews) about the [t]hird [p]arty's drug-seeking behavior and thus formulated opinions based on the irrelevant records." *Brief* [#8] at 2. The next ALJ would also face a mountain of fraudulent, unrelated records along with opinions from several medical providers who may have relied, in part, on those records. Plaintiff would place the next ALJ in the exact same catch-22 situation.

After all, the ALJ is *required* to consider prior medical findings and explain her consideration of those medical findings on the record. *See* 20 C.F.R. § 404.1520c(a) (stating that "[the Commissioner] will articulate how [she] considered the medical opinions and prior administrative medical findings in [the claimant's] claim according to paragraph (b) of this section"); 20 C.F.R. § 404.1520c(b) (stating that "[the Commissioner] will articulate in [her] determination or decision how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case records" subject to listed "articulation requirements"). Because the ALJ considered the prior medical findings in her decision, as she was required to do, Plaintiff accuses the ALJ of implicitly crediting prior medical findings that were tainted by fraudulent records. *Brief* [#8] at 2. The Court does not see how this ALJ or the next could possibly address Plaintiff's concerns while still considering the prior medical findings the regulations require them to consider. The Court will not adopt an argument that would impose an impossible task on the ALJ.

Accordingly, the Court finds that the record contains substantial evidence from which the ALJ concluded that Plaintiff is not entitled to benefits under the Act during the time relevant to this case. The ALJ's decision was based upon substantial evidence and is free of reversible legal error.

## IV. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Commissioner's decision in this case is **AFFIRMED**.

IT IS FURTHER **ORDERED** that each party shall bear its own costs and attorney's fees.

IT IS FURTHER **ORDERED** that the Clerk of Court shall **enter** judgment in favor of Defendant and **close** this case.

Dated: March 27, 2024                                    BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge